**MARYLAND CASUALTY COMPANY, Plaintiff-Appellant,**

v.

**INTEGRITY INSURANCE COMPANY, Defendant-Appellee.**

No. 82–4244

Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Dec. 13, 1982.

Daniel, Coker, Horton & Bell, Curtis E. Coker, Thomas H. Suttle, Jr., Jackson, Miss., for plaintiff-appellant.

Steen, Reynolds, Dalehite & Currie, William M. Dalehite, Jr., Whitman B. Johnson, III, Jackson, Miss., for defendant-appellee.

Before GEE, RANDALL and TATE, Circuit Judges.

PER CURIAM:

This is a diversity case involving the potential liability of two insurance companies for a claim arising out of an accident between an automobile and a tow truck pulling a disabled tractor (truck). The district court held that the insurance policy issued on the towed vehicle did not cover the accident because the towed vehicle was being used by a person in connection with an automobile business. While we affirm the district court's holding that the policy did not cover the accident, we do so on the basis of a second exclusion in the policy involving persons using the insured vehicle as a trailer.

## I. PROCEDURAL AND FACTUAL BACKGROUND.

On July 3, 1978, a truck tractor owned by Central and Southern Truck Lines, Inc. ("Central") became disabled near Seminary, Mississippi. Central hired J.B. Davenport, d/b/a Davenport Wrecker Service, to tow the tractor from where it was disabled to Central's place of business in Memphis, Tennessee for repairs. Davenport, whose business was also located in Memphis, Tennessee, sent one of his wreckers to Seminary to pick up the disabled tractor. The wrecker was operated by Horace Griffin, Davenport's employee.

After arriving in Seminary, Griffin placed Central's tractor in tow and began the return trip. On the way to Memphis, Griffin was involved in an accident with an automobile driven by Lottie Leggett. Mrs. Leggett and two of her grandchildren were injured in the collision.

At the time of the accident, Davenport's wrecker was covered by an insurance policy issued by Maryland Casualty Company ("Maryland") and carrying limits of $100,000 per person and $300,000 per occurrence. The Central tractor being towed by Griffin was covered under an insurance policy issued by Integrity Insurance Company ("Integrity") which provided coverage of up to $250,000 per person and $500,000 per occurrence. After settling two of the three claims which arose from the collision allegedly caused by Griffin's negligence, Maryland filed suit against Integrity for contribution on the grounds that the Integrity policy also provided coverage for the accident in question. Integrity denied the claim.

The case was tried before the district court on stipulated facts. The court ruled that Davenport and his employee were not

covered under the Integrity policy. Maryland filed this appeal.

## II. CHOICE OF LAW.

We must first determine whether the district court should have applied Tennessee or Mississippi law in interpreting the insurance contract in this case. The district court found resolution of the choice of law question to be unnecessary, apparently because neither Tennessee nor Mississippi law supplied a definitive answer to the questions in the case. Because there are Tennessee cases which apply to some of the issues raised in the case and which have no counterpart in Mississippi law, the choice of law question should have been resolved.

 A federal district court sitting in a diversity case must apply the choice of law rules that would be applied in the forum state, in this case, Mississippi. *Klaxon Co. v. Stentor Electric Manufacturing Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Mississippi applies the "center of gravity" approach to resolving choice of law issues in contract cases. *See Dunavant Enterprises, Inc. v. Ford,* 294 So.2d 788 (Miss.1974); *Mitchell v. Craft,* 211 So.2d 509 (Miss.1968); *Craig v. Columbus Compress & Warehouse Co.,* 210 So.2d 645 (Miss.1968). Under this approach, the court

> applies the law of the place which has the most significant relationship to the event and the parties, or which, because of the relationship or conduct with the event or the parties, has the greatest concern with the specific issues with respect to the liabilities and rights of the parties to the litigation.

*Craig, supra,* at 649.

The accident which gave rise to this litigation occurred in Mississippi and the plaintiffs in the automobile were Mississippi residents. Both the wrecking company, Davenport, and the owner of the disabled vehicle, Central, were residents of Memphis, Tennessee. Davenport's employee was towing the vehicle back to its owner in Tennessee for repairs. Both insurance policies were executed and delivered in Tennessee.

A prior decision of this court indicates that Mississippi would apply Tennessee law in this context. In *Blue Bird Body Co. v. Ryder Truck Rental,* 583 F.2d 717 (5th Cir. 1978), we held that Mississippi would have applied Georgia law in construing insurance policies issued in Georgia to Georgia residents even though the collision which had created the lawsuit had occurred in Mississippi. Maryland points out that all of the plaintiffs in *Blue Bird* had settled, thereby leaving only the Georgia parties to argue about the issues in the case, while one Mississippi plaintiff has yet to settle in this case. We do not think that this distinction is critical, since both parties to this litigation are Tennessee residents and the issues involve the interpretation of contracts issued in Tennessee. The interpretation of these contracts will not affect whether the Mississippi resident will recover for her injuries, but rather from whom she may recover. Since Tennessee is the state with the greatest concern with the issues in this case, Tennessee law should be applied in resolving those issues.

## III. THE INTERPRETATION OF THE INSURANCE CONTRACT.

 The controversy in this case centers on whether the insurance policy issued by Integrity to the owner of the disabled tractor covered the employee of the towing company while he was towing the disabled vehicle. There is no question that the policy issued to Davenport provided coverage. In interpreting the various provisions of the insurance contract at issue, we must resolve any ambiguity in the contract in favor of the insured. *See Blue Ridge Insurance Co. v. Haun,* 197 Tenn. 527, 276 S.W.2d 711, 713 (1953); *Wilkinson v. United States Fidelity & Guaranty Co.,* 55 Tenn.App. 54, 396 S.W.2d 86 (1965). Thus, an omnibus clause extending coverage to other users of the insured vehicle must be liberally construed, while exclusions from coverage must be construed narrowly.

The Integrity policy contains a standard omnibus clause which extends coverage to any person "using" the insured vehicle with the insured's permission. The district court

held that towing a vehicle is a "use" which would bring the wrecker's towing of the tractor within the coverage of the omnibus clause. While there is apparently no Tennessee case on point, the district court's interpretation of the meaning of the word "use" is in accord with case law in other jurisdictions, *see e.g., State Automobile Mutual Insurance Co. v. State Farm Mutual Insurance Co.,* 456 F.2d 238 (6th Cir.1972); *Industrial Indemnity Co. v. Continental Casualty Co.,* 375 F.2d 183 (10th Cir.1967); *American Fire & Casualty Co. v. Allstate Insurance Co.,* 214 F.2d 523 (4th Cir.1954); *Dairyland Insurance Co. v. Drum,* 193 Colo. 519, 568 P.2d 459 (1977); *Howard v. Ponthieux,* 326 So.2d 911 (La.App.1976); *Hartford Accident Indemnity Co. v. Travelers Insurance Co.,* 167 N.J.Super. 335, 400 A.2d 862 (1979).

■ The Integrity policy also contained a number of exceptions to the omnibus clause, two of which are at issue here. First of all, the policy excluded from coverage: "(iv) any person while employed in or otherwise engaged in duties in connection with an *automobile business,* other than an *automobile business* operated by the *named insured.*" Record at 102–03 (emphasis in original). An automobile business is defined elsewhere in the policy as "the business or occupation of selling, repairing, servicing, storing or parking *automobiles.*" Record at 103 (emphasis in original). The district court concluded that Davenport's wrecking service was an automobile business within the exclusionary clause and that, therefore, the Integrity policy did not extend coverage to Davenport where his employee was towing the insured vehicle.

The definition of "automobile business" in the policy does not specifically list towing as one of the activities covered by the clause. While the Tennessee courts have not specifically addressed the question of whether a towing service is covered under the towed vehicle's insurance policy, they have held that a truck repair service's exchange of a truck so that it could be repaired was within the exclusion for activities "in connection with an automobile business." *Terminal Transport v. Cliffside Co.,* 608 S.W.2d 850 (Tenn.App.1980). Similarly, a number of jurisdictions have held that the pick-up and delivery of an automobile by a service and repair station is within the exclusion. *See Universal Underwriters Insurance Co. v. Pan American Insurance Co.,* 450 F.2d 1050 (5th Cir.1971) (construing Texas law); *Deville v. United States Fidelity and Guaranty Co.,* 258 So.2d 694 (La.App. 1972); *Weston v. Great Central Insurance Co.,* 514 S.W.2d 17 (Mo.App.1974); *but see Dumas v. Hartford Accident and Indemnity Co.,* 181 So.2d 841 (La.App.1965).

Both parties in this case stipulated, however, that Davenport was solely a wrecking service and that it did not repair vehicles for the public. Record at 157. The cases excluding from coverage accidents that occurred while the insured vehicle was being transported explicitly rely on the fact that the transportation was conducted *in connection with* an activity expressly mentioned in the definition of an automobile business. For example, *Terminal, supra,* involved a truck repair service. In *Howard v. Ponthieux, supra,* the Louisiana Court of Appeals held that a towing company fell within the exclusion because it also stored the vehicles it towed. Two jurisdictions that have construed similar exclusionary clauses have held that transportation of automobiles, without more, is not an automobile business, *Demshar v. Aaacon Auto Transport, Inc.,* 337 So.2d 963 (Fla.1976); *Allstate Insurance Co. v. Federal Insurance Co.,* 23 Md.App. 105, 326 A.2d 29 (1974), *aff'd as modified,* 275 Md. 460, 341 A.2d 399 (1975), and Integrity has not cited any decision to the contrary.

This review of the cases indicates that the district court's holding that Davenport was excluded from coverage under the Integrity policy as an automobile business was incorrect in light of the absence of evidence that the wrecking service engaged in *any* of the activities listed in the definition of such a business.[1] Since we must construe this

1. Integrity claims that a provision in the con- tract concerning maximum storage indicates

exclusionary clause narrowly, *see Midland Insurance Co. v. Home Indemnity Co.,* 619 S.W.2d 387 (Tenn.App.1981) (holding that an automobile business exclusion did not apply where repairs on the vehicle had been completed since the plain language of the policy applied *only while the person was engaging in the listed activities*), we hold that Davenport's business was not an automobile business within the definition provided in the insurance policy, and that therefore the exclusion did not apply.[2]

■ Integrity contends that a second provision in the policy excludes Davenport and his employee from coverage because the tractor was being used as a trailer at the time of the accident. The policy provides that it does not insure the following:

(iii) Any person or organization, other than the named insured, with respect to:

. . . . .

(2) A *trailer* while used with any motor vehicle owned or hired by such person or organization and not covered by like insurance in the company. . . .

Record at 103 (emphasis in original).

Integrity cites two cases for the proposition that the disabled tractor was a trailer within the meaning of the exclusion. *Blue Ridge Insurance Co. v. Haun,* 197 Tenn. 527, 276 S.W.2d 711 (1954); *Waddey v. Maryland Casualty Co.,* 171 Tenn. 112, 100 S.W.2d 984 (1937). In *Waddey,* the Tennessee Supreme Court defined a trailer as a "vehicle or one in a succession of vehicles hauled, usually by some other vehicle." 100 S.W.2d at 986. The court held that a wagon towed by the insured vehicle was a trailer within the meaning of the exclusionary clause in the insurance policy issued to the towing vehicle. In *Blue Ridge,* the Tennessee Supreme Court held that a "hot rod" being towed by the insured vehicle was a

trailer even though the vehicle was an automobile capable of being propelled under its own automotive power. The court stated:

Of course the "hot-rod" set out by itself might be an automobile and not a trailer but the thing that determines whether or not it is a trailer is the manner in which it was being used under the facts of the instant case that is the determinative answer, not what it is alone when not attached to the automobile. This seems so clear and unanswerable to us that we made no comment on the question and would not now except for the insistences made.

276 S.W.2d at 715. The court went on to reaffirm the definition set forth in *Waddey:*

Here we have a clear definition adopted by this Court . . . of what a trailer is. We see no compelling reason or any other reason now why we could adopt a better definition. This is true, too, when we consider the fact that the dictionaries from the present time back beyond the decision in the Waddey case all adopt the same definition as that applied by this Court and adopted as its definition of a trailer.

. . . . .

[E]ven the definitions adopted by the courts generally are not far from that as adopted by this Court. It is true that there are some cases from other jurisdictions that apply a different definition to a trailer. Should we though leave the definition of a trailer as adopted by this Court (when there is no compelling reason) and adopt the definition as used by a court of another state? To ask the question is to answer it.

*Id.*

The district court found the cases cited by Integrity "unpersuasive," Record at 161;[3]

---

that Davenport also stored vehicles. No such argument was made to the district court; in fact, Integrity stipulated to the limited nature of Davenport's business.

**2.** The interpretation of a contract is normally considered to be a question of law, not subject to the clearly erroneous standard of Fed.R.

Civ.P. 52(a). *Backar v. Western States Prod. Co.,* 547 F.2d 876 (5th Cir.1977); *First Nat'l Bank v. Ins. Co. of N. Am.,* 495 F.2d 519 (5th Cir.1974).

**3.** Integrity is not prevented from urging us to affirm the district court's judgment on a

we, on the other hand, can only conclude that they are controlling. In contrast to the definition of an automobile business, the definition of a trailer in the Integrity policy was inclusive.[4] Therefore, the meaning of the word "trailer" must be interpreted against the background of a prior judicial construction of that same word in a similar insurance policy. *See Blue Ridge,* 276 S.W.2d at 713. Accordingly, we hold that under Tennessee law, the Central tractor was a trailer within the meaning of the exclusionary clause in the Integrity policy because it was being hauled by another vehicle, rather than being propelled under its own power. *Blue Ridge, supra; Waddey, supra.*

Since the Integrity policy did not extend coverage to Davenport's employee while he was using the insured vehicle as a trailer, the district court's holding that Maryland was not entitled to any contribution from Integrity is affirmed. Our disposition of this case makes unnecessary consideration of whether the coverage offered by Integrity would have been primary or excess coverage under Tenn.Code Ann. § 56–7–1101 (1977).

Maryland shall bear the costs of this appeal.

AFFIRMED.

---

ground rejected by the court below even though it failed to file a cross-appeal. The appellee, without cross-appealing, "may rely upon any basis in the record in support of the judgment." *Weingart v. Allen & O'Hara, Inc.,* 654 F.2d 1096, 1106 (5th Cir.1981); *see also United States v. American Ry. Express Co.,* 265 U.S. 425, 435, 44 S.Ct. 560, 563, 68 L.Ed. 1087 (1924).

4. The definition of an automobile business in the policy provides that "automobile business *means* the business of selling, repairing, servicing, storing or parking automobiles." The definition of a trailer provides that it "*includes* semi-trailers ...." Record at 103 (emphasis added).