504 P.2d 1210

**AMCO INSURANCE COMPANY, a corporation, Plaintiff-Respondent,**

v.

**Paul CHESLEY, Defendant-Appellant,**

**Orvil I. Fairchild et al., Defendants.**

**No. 11058.**

Supreme Court of Idaho.

Dec. 27, 1972.

Roger D. Ling, Rupert, for defendant-appellant.

Benoit, Benoit & Alexander, Twin Falls, for plaintiff-respondent.

DONALDSON, Justice.

This action for declaratory relief was commenced by the respondent, Amco Insurance Company, which sought a judgment declaring that it was not obligated to defend a civil action pending against the appellant, Paul Chesley, or to pay any resulting judgment. After both parties had moved for summary judgment, the district court granted summary judgment in favor of the respondent. The appellant appeals from this judgment and requests that it be reversed, and that judgment be entered in his favor or that the case be remanded for a trial. The other defendants in this action are the plaintiffs in the personal injury action pending against the appellant, and they have not joined in this appeal.

The appellant seeks to hold the respondent liable to defend an action which arose

as a result of the detachment of a portable welder which was being towed behind a pickup truck owned by the appellant and insured by the respondent; after coming loose, the welder was struck by another vehicle, and serious injuries resulted to its occupants. At the time of the accident, the appellant's principal occupation was well drilling. The portable welder was owned by James Eaton, who hired the appellant to drill a well near Hagerman, Idaho. On the day of the accident, the appellant borrowed the portable welder from his employer, and while driving to the well site, it came loose and subsequently was struck by the Fairchild automobile.

The insurance policy issued to the appellant provides coverage for liability arising out of the "use of the automobile"; it also contains the following definitions:

"IV  *  *  *

(a) Automobile.  *  *  *  [T]he word 'automobile' means:

    *     *     *     *     *     *

(2) Trailer— *  *  * a trailer not described in this policy, if designed for use with a private passenger automobile, if not being used for business purposes with another type automobile *  *  *.

    *     *     *     *     *     *

(b) Private Passenger Automobile. The term 'private passenger automobile' means a four-wheel private passenger, station wagon or jeep type automobile."

The question decisive of this appeal is whether the portable welder was a "trailer" as defined in the insurance policy; for if it was not such a trailer, then there is no apparent basis for concluding that the policy covered liability arising out of the use of an "automobile," as defined in the policy. It is the conclusion of this Court that the portable welder was not a trailer, within the meaning of the policy, because it was not "designed for use with a private passenger automobile."

In Lewellyn v. State Farm Mutual Automobile Insurance Co., 222 Tenn. 542, 438 S.W.2d 741 (1969), the insured was pulling a borrowed "mobile welding rig," which came loose, causing damage to another automobile and a passenger therein. The Supreme Court of Tennessee held that the welding rig was a trailer designed for use with other than a private passenger automobile. Similarly, it has been held that a "mobile pump" was a trailer not designed for use with a private passenger automobile. Liberty Mut. Ins. Co. v. Allied Mut. Ins. Co., 442 F.2d 1151 (10th Cir. 1971). In both of the cited cases, the insurance policy provisions were substantially the same as those involved in the case at bar.

The appellant notes that the portable welder could have been pulled by any type of vehicle—including a private passenger automobile—equipped with a trailer hitch containing a hole for fastening the tongue of the trailer to the motor vehicle by means of a bolt or a rod. However, the phrase "designed for use with a private passenger automobile" may not be deemed synonymous with "capable of being towed by a private passenger automobile." As the court stated in Liberty Mutual Insurance Co. v. Allied Mutual Insurance Co., *supra*:

"We do not at all say that the district court erred in its painstaking effort to define 'trailer'. Its error, as we see it, lay in not attaching more significance to the limitation trailing 'trailer', i. e., 'designed for use with a private passenger automobile.' If these words were given any significance, they were deemed synonymous with 'capable of being drawn and towed' by a private passenger automobile. This interpretation renders them meaningless for obviously something which cannot be drawn or towed will never become involved in an accident, at least one between moving vehicles. By the same token, if a trailer is equipment which can be 'trailed', then construing the limiting language as the court did, if it construed it at all, would have us read the policy as covering 'equipment which can be trailed if capable of being drawn or towed by a car.' So read, the clause would be a classic of redundancy. On the other hand, 'de-

signed for use with' seems to us to connote an object planned with a particular use in mind and so manufactured as to serve that use with reasonable efficiency and safety.

\* \* \* \* \* \*

We conclude that the mobile pump was not a 'trailer designed for use with a private passenger car'. Allied quite reasonably declined to accept responsibility for everything its policyholders could put on wheels and pull with a car." 442 F.2d at 1153–1154.

Since we have decided that the portable welder towed by the appellant was not designed for use with a private passenger automobile, we do not have to reach the further question raised by the appellant as to whether his pickup truck was a "private passenger automobile." Even if the portable welder was, in fact, being used with a private passenger automobile, under the terms of the policy the welder was covered only "if designed for use with a private passenger automobile," and we have held it was not so designed.

Judgment affirmed. Costs to respondent.

McQUADE, C. J., and McFADDEN, and BAKES, JJ., concur.

SHEPARD, Justice (dissenting).

Appellant in this case purchased an automobile insurance policy covering his pickup truck. Appellant could well have been convinced from his insurance policy that it covered not only his pickup truck but any "trailer" drawn by the pickup. I agree with the majority opinion that the determinative question is whether the portable welder was a trailer.

The majority opinion relies solely upon the cases of Lewellyn v. State Farm Mutual Automobile Insurance Co., 222 Tenn. 542, 438 S.W.2d 741 (1969), and a 10th Circuit decision in 1971, Liberty Mut. Ins. Co. v. Allied Mut. Ins. Co., 442 F.2d 1151. I believe neither of these cases supports

the majority decision that the vehicle in question herein was not a "trailer." The court in *Liberty Mutual Insurance Co.* indeed held that the vehicle involved therein was not a "trailer" but the decision of that court was reached upon evidence substantially different than in the case at bar. That court stated:

"The undisputed evidence clearly indicates that the portable pump was not 'designed' to be towed by a passenger car. The pump was not designed by the manufacturer to be portable; the original owner, who operated a nursery, had made the equipment mobile by mounting it on a simple frame with attached wheels. The device had no brakes or taillights. It weighed 1500 to 1800 pounds and was tail-heavy so that it did not balance properly. It could not be attached to a standard automobile hitch; instead a standard hitch had to be inverted and fastened to the tongue by wire and chain. In a deposition May, the owner of the pump, stated that the pump was not designed for highway use, that he did not intend to use it on the highway, and that he was merely taking it home on the day of the accident. He also stated he planned to leave the pump attached to the frame and that it would be very difficult to use the frame for any other transport purposes.

\* \* \* \* \* \*

"Allied quite reasonably declined to accept responsibility for everything its policyholders could put on wheels and pull with a car. It insured only those 'trailers' designed to be pulled by cars because it wanted to cover only trailers that would not be, in and of themselves, highway hazards. A heavy piece of machinery on wheels, that had no brake or taillights, that was improperly balanced to be towed by car, that could not be attached to a standard automobile trailer hitch, and that was not designed or generally used on the highway is not covered under the Allied policy." 442 F.2d at 1153–1154.

In my judgment nothing in the record herein indicates the applicability of that case and that language to the case at bar.

I further believe *Lewellyn* inapplicable to the case at bar. Therein a borrowed mobile welding rig was being pulled behind a truck, came loose and damaged an automobile and a passenger therein. The Tennessee Court held that no coverage existed under an insurance policy worded substantially similar to the case at bar. However, the reasons for the Tennessee Court decision are articulated as follows:

"Since it is stipulated the trailing welding rig was non-owned, was not being pulled by a private passenger or a utility automobile, and since the welding rig was a trailer designed for use for business purposes with other than a private passenger automobile, there is no coverage afforded by the policy. For cases defining the mobile welding rig as a trailer, see Waddey v. Maryland Casualty Co., 171 Tenn. 112, 100 S.W.2d 984 * * * ; Blue Ridge Insurance Co. v. Haun, 197 Tenn. 527, 276 S.W.2d 711." 438 S.W.2d at 742.

It is clear to me that had the other factors not existed in that case the Tennessee Court would have held the mobile welding rig as a "trailer." In *Blue Ridge Insurance Co.,* cited by the Tennessee Court in *Lewellyn,* the court held that a "souped-up hot rod" car being towed behind another automobile was a "trailer."

In *Waddey* cited in *Lewellyn* two small boys were pushing a homemade wagon along a highway. The wagon was constructed from the frame of a small pony buggy having 4 model-T Ford wheels with no tires thereon. It had no bed or seats. A rope was tied to the front end of the wagon which was used to pull the same. The boys were offered a tow by a passing motorist. One climbed upon the luggage carrier of the car and tied the rope to the rear of the car. The court in *Waddey* held that the vehicle such as it was constituted a "trailer."

I suggest that none of the Tennessee cases support the majority position in the case at bar.

No clear statement of law exists construing language such as that contained in the insurance policy (*See:* 109 A.L.R. 654, 31 A.L.R.2d 298 and cases contained in such annotations). All ambiguities in insurance policies are to be construed most strongly against the insurer. Upon a motion for summary judgment, the affidavits and evidence must be most liberally construed in favor of the party opposing the motion and the party opposing the motion is given the benefit of all favorable inferences which might be reasonably drawn therefrom. Sutton v. Brown, 85 Idaho 104, 375 P.2d 990. Under these circumstances, in my judgment, the motion for summary judgment in the case at bar should have been denied and this cause should be reversed and remanded for further proceedings.